## A. F. Hurlbut *v.* The State.

Malicious Mischief — Case Stated — Charge of the Court. — The information charged the appellant with pulling down the fence of F., without the consent of F.   The evidence showed that the fence was the joint property of F. and M.; that appellant was a tenant of M., and that S. was the tenant of F., and that the appellant pulled the fence down without the consent of either F. or S.   The appellant asked the court to charge in substance that if two men own jointly a division fence, and one of them pull it down to enter, he is not criminally liable upon an information charging the breaking of the fence of the joint owner.   *Held*, that the charge was properly refused; that one joint owner was not justifiable in breaking the fence without the other's consent; and that it was sufficient to allege the property in F., without alleging the joint proprietorship.

Appeal from the County Court of Tarrant.   Tried below before the Hon. R. E. Beckham, County Judge.

The punishment imposed upon appellant for this misdemeanor was a fine of $15.

The agreed evidence upon which the appeal was submitted was: 1. That the fence broken was a division or

partition fence between the field of the prosecuting wit-
ness, Fleming, and the field of Chas. E. Mason, and was
owned by them jointly, and had been built about three
years.

2. That the part of the fence broken had been used as
a passway where there had been bars some months pre-
vious, but had been closed by nailing up the bars, and
adding two wires and setting a post therein.  This was
done by Smith, Fleming's tenant, without defendant's or
Mason's consent, and the fence was so closed up at the
time defendant broke and pulled it down.  Originally the
bars were not there, but they were placed there by agree-
ment of the defendant and a negro sub-tenant on Flem-
ing's place, without consulting Fleming, who was living
in Fort Worth.  The defendant furnished the plank for
the bars.

3. That at the time of the breaking down of the fence,
the defendant was the lessee of Mason, the part owner of
the fence.

4. Fleming was not in personal possession of his prem-
ises upon which said fence was situated, but had leased
said premises to one Smith, to cultivate for the ensuing
year, and had reserved no special control over the fences,
but had bound Smith to keep the fences up and in good
repair.  The lease was in usual terms.

5. That the defendant, on the 27th of December, 1880,
tore down the fence, where the bars had been nailed up,
without either Fleming's consent or Smith's consent; that
he left said fence down after he had opened it, but did
not take the fence or any part of it away with him.

6. That the fence had been torn down twice before
since Smith had nailed it up, and was left down.  Smith
did not see it torn down, but the defendant admitted to
Smith that he tore it down once.  The defendant had 50
or 60 head of cattle running in his field at the time that
the fence was torn down.  The pasturage in Fleming's

field was good at that time. Smith turned the defendant's cattle out of the field every time the gap was down, but did not see them get in at the gap.

*Ball & McCart,* for the appellant. We submit to the court that every assignment of appellant is well taken, but especially that upon the proposition that the pulling down of a partition fence by one of the part owners cannot be held to be a criminal act of malicious mischief under art. 684, Penal Code.

Shall it be said that while both the common law and the statute alike forbid the punishment for theft when one steals property of which he is joint owner (Penal Code, art. 731), he may still be punished for merely removing or injuring the same property without any *animo furandi?* We apprehend not.

He certainly could not be liable even to an action of trover unless he converted the property. How then can he be held criminally liable? The court should have charged the jury that if the fence pulled down belonged to defendant, or if defendant was joint owner, or had joint control of said fence, he was entitled to an acquittal.

*Again:* It appearing from the evidence that Fleming had parted with his right to control said fence by lease to Smith, we take it that said Smith alone was the owner so far as the pulling down said fence was concerned. Could Smith have been legally found guilty of the charge here preferred, had *he* pulled down the fence without Fleming's consent, he being Fleming's tenant? We think not. We take it that there can be no general and special ownership in cases of this character as in cases of theft. There can be but one owner, viz.: the party who alone can consent to the pulling down. Smith alone could pull down or consent to the pulling down of said fence, and Smith should have been laid as the owner.

*Lastly:* We insist that the evidence showed that there

was simply a dispute as to the opening of a passway which had before been used as such. No malice was shown, nor did any of the elements of malicious mischief appear. Defendant owned the rails; and the only way we can account for the verdict of the jury, even under the court's charge, is that they were misled by the admission of the irrelevant evidence complained of in our bill of exceptions.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. The defendant was convicted of the offense of pulling down the fence of another, without his consent. (Penal Code, art. 684.) The fence was alleged to be the property of J. W Fleming. The evidence showed that the fence was a division fence between the enclosed lands of said Fleming and one Mason, and the joint property of both Fleming and Mason; and that, at the time the fence was pulled down by defendant, he, defendant, was the tenant of Mason, and in possession of Mason's land, and that one Smith was the tenant of Fleming, and in possession of Fleming's land. It was shown that defendant pulled the fence down without the consent of Fleming or his tenant Smith.

Upon the trial the defendant's counsel requested the court, among other things, to instruct the jury as follows: "If two men jointly own a division fence, then, if one of said joint owners break and pull down a part of said fence to pass through, then said joint owner is not criminally liable upon the charge or information of breaking and pulling down the fence of the other joint owner." The same principle was embraced in other special charges asked by the defendant. The court refused to instruct the jury in accordance with this view, but instructed the jury substantially, that if the fence was jointly owned by Fleming and Mason, and the defendant pulled it down

without the consent of Fleming, he was guilty of the offense charged.

The only question arising in the case for our determination, is: Is it a violation of art. 684 of the Penal Code for one joint owner of a fence to pull it down without the consent of the other? The defendant being a tenant of Mason, one of the joint owners of the fence, is, for all the purposes of this case, invested with all the rights of Mason. The precise question here presented has never been determined by this court. The allegation of ownership in the information, alleging the sole ownership of the fence to be in Fleming, is sufficient, notwithstanding the evidence showed a joint ownership between him and Mason. (Code Crim. Proc. art. 426.) A part owner of property cannot be punished for the theft of such property, unless the person from whom it is taken be wholly entitled to the possession at the time. (Penal Code, art. 731.) But, on the other hand, one of the part owners of a house is not permitted to burn it. (Penal Code, art. 660.) It is argued by counsel for defendant that if a joint owner of property cannot steal it, *a fortiori* he cannot be held criminally responsible for destroying or injuring it. While we concede the plausibility of this argument, we do not agree to the soundness of it. If the position is correct, it would relieve a part owner from criminal responsibility for arson committed upon property of which he was a part owner.

We think the just and true rule is that one joint owner of property must not be permitted to so use it, or deal with it, as to injure the other joint owner. The fence in question, while it was the joint property of two persons, also divided and partly enclosed the several lands of those two persons, and was erected and kept up for the protection of the *several*, not *joint* crops of those two persons. What justice or right would there be in permitting one of these joint owners to take away from the other the

protection which the fence afforded to the crops and land of the latter, which are not joint property? We can see no good reason why a joint owner of a fence should be exempted from the penalties of this statute. If the Legislature had so intended, it is reasonable to suppose that a provision would have been inserted in the statute, as was done in the statute defining and punishing theft, that a part owner should be exempt from the operation of this law. We think the judge who tried this case charged the law of the case correctly, and that the defendant was properly convicted.

The judgment of conviction is accordingly affirmed.
*Affirmed.*